UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/22/2021__
```

-------------------------------------------------------------------X
                            :

AKASH BUDHANI, *individually and on behalf of all
others similarly situated,*             :
                            :

               Plaintiff,      :          20-cv-1409 (LJL)
                            :

         -v-                  :     OPINION AND ORDER
                            :

MONSTER ENERGY COMPANY,        :
                            :

              Defendant.     :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant Monster Energy Company ("Monster" or "Defendant") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint against it for failure to state a claim for relief. For the following reasons, Defendant's motion to dismiss is granted.

## FACTUAL BACKGROUND

      Monster manufactures, distributes, markets, labels, and sells espresso energy drinks blended with European milk and purporting to be flavored with vanilla under their Monster brand. Dkt. No. 30 ("Complaint" or "SAC") ¶ 1. The drinks are available to consumers from third party retail and online stores, Monster's website, and Amazon.com. *Id*. ¶ 2. One Monster brand espresso energy drink identified by Plaintiff Akash Budhani ("Plaintiff") is the Espresso Monster Vanilla Cream Triple Shot (the "Product"). *Id.* ¶ 3. The front label of the Product contains the representations "Vanilla Cream," "Triple Shot," and an image of the vanilla flower. *Id*. The front label appears as follows:



Dkt. No. 33-2

Plaintiff claims that he purchased Espresso Monster Vanilla Cream Triple Shot on one or more occasions.  *Id.* ¶ 88.  Plaintiff alleges that the reference on the Product's front label to "Vanilla Cream" would convey to a reasonable consumer that the product contains vanilla sourced from vanilla beans, produced from a fruit pod on an orchid plant that originated and was first cultivated in Mexico.  *Id.* ¶¶ 14, 15.  This bean is not consumed alone—it is heated in the sun for weeks and then placed in ethyl alcohol, where its flavor constituents are extracted and the solution becomes known as vanilla extract.  *Id.* ¶ 16.  Plaintiff does not allege that the Product does not *taste* like vanilla; rather, Plaintiff's claims center on the ingredients that are included in

the Product or that contribute to the vanilla taste.  Specifically, Plaintiff claims that the representations on the Product's label are false and misleading in several alternative respects: (1) it conveys that the Product contains extract from the vanilla bean, whereas in fact the Product "contains trace or a *de minimis* amount of vanilla from real vanilla beans from the vanilla plant, *id.* ¶ 4; *see also id*. ¶ 44; (2) it falsely conveys that the Product's taste is provided predominantly or exclusively from vanilla beans, whereas other ingredients contribute to the vanilla taste, *id*. ¶ 68; *see also id*. ¶¶ 45, 63, 89; and (3) it fails to disclose that the Product contains artificial vanilla, specifically vanillin and artificial flavors maltol and piperonal.  *Id.* ¶ 44.

Plaintiff relies on a consumer survey he commissioned to support these contentions. According to Plaintiff, the survey demonstrates that over 56% of respondents believed that the flavor in Defendant's Product "came from vanilla beans from the vanilla plant."  *Id.* ¶ 43.  In addition, Plaintiff offers results from a Gas Chromatography-Mass Spectrometry ("GC-MS") test performed on the Product, which he alleges demonstrates that the "Natural Flavors" listed in the ingredients may contain some vanilla but that the Product is "predominantly flavored by non-vanilla flavors including vanillin."  *Id*. ¶ 63.

Plaintiff contends that the amount and proportion of vanilla has a material bearing on price and consumer acceptance of the Product.  *Id.* ¶ 107.  Plaintiff alleges that when he purchased the Product, he relied upon the Product's front label claims for his expectation that the Product's taste came exclusively and/or predominantly from vanilla beans from the vanilla plant. *Id.* ¶ 89.  Because of Defendant's false and misleading statements and omissions, Plaintiff alleges, the Product was worth less than what he paid for it.  *Id.* ¶ 92.  If the true facts had been known, Plaintiff claims that he would not have purchased the Product or paid as much for it.  *Id.* ¶ 111.

Plaintiff also claims that Defendant's labeling violates Food and Drug Administration ("FDA") regulations governing how food flavorings are labeled.  *Id*. ¶¶ 65, 67.  Those regulations set forth the requirements for how a manufacturer or distributor must label foods "with respect to the primary recognizable flavor(s)," including what is called "the characterizing flavor."  21 C.F.R. § 101.22(i). They provide that if the labeling or advertising of a product makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, or other means, or if for any other reason the manufacturer or distributor wishes to designate the type of flavor in the product other than through the statement of ingredients, such flavor shall be considered the characterizing flavor.  21 C.F.R. § 101.22(i).  If a food "contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla.'"  21 C.F.R. § 101.22(i)(1).  However, if a food "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor . . . and the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored.'" 21 C.F.R. § 101.22(i)(2).  Plaintiff contends that the presence of vanillin in the Product constitutes an artificial flavor, under 21 C.F.R. § 101.22(i)(2), and required Defendant to add to the front label the statement that it was "artificially flavored." SAC ¶ 67.  Additionally, Plaintiff contends that under 21 C.F.R. § 169.181(b), the Product's ingredient list must disclose the presence of vanillin from non-vanilla sources as an artificial flavor because it is paired with vanilla.  *Id*. ¶ 65.

Plaintiff brings claims for damages for violations of New York General Business Law (the "NYGBL") §§ 349 and 350 and common law claims on behalf of himself and a class consisting of all purchasers of the Product who resided in New York during the applicable statutes of limitations. The Complaint can also be construed to bring claims based on federal labeling standards, 21 C.F.R. § 101.22(i). Defendant moves to dismiss the Complaint, raising five principal arguments in support of its motion. First, Defendant argues that no reasonable consumer would understand the label to make a representation about whether the Product contains vanilla from vanilla beans and how much. Second, Defendant argues that Plaintiff's allegations about the contents of the Product are based on speculation insufficient to support a claim under the NYGBL. Third, Defendant argues that federal law preempts Plaintiff's attempt to require Defendant to specifically identify every flavor in the Product on the front label or in the ingredients list, as these requirements mark an improper attempt to privately enforce the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*., and the regulations promulgated thereunder. Fourth, Defendant argues that Plaintiff's common law claims fail as a matter of law, regardless of whether they are couched as fraud, breach of warranty, or unjust enrichment claims. Fifth, Defendant argues that Plaintiff lacks standing to seek injunctive relief because no risk of future harm is alleged.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Although the Court must accept all the factual allegations of a complaint as true, it is not "bound to accept as true a legal conclusion couched as

a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)).

## DISCUSSION

### A.      N.Y. Gen. Bus. Law Sections 349 and 350

Section 349 of the NYGBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  Section 350 of the NYGBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 350.  In order to state a claim under either Section 349 or 350, a plaintiff must allege: (1) that the defendant's acts were consumer oriented,[1] (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result.  *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014); *see Orlander v. Staples, Inc.* 802 F.3d 289, 302 (2d Cir. 2015) (at the pleading stage, plaintiff must allege that "on account of a materially misleading practice, [Plaintiff] purchased a product and did not receive the full value of [their] purchase") (citation omitted).  A deceptive act or practice is one "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).  In determining whether a label is deceptive, "[c]ourts view each allegedly misleading statement as a whole," *Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (quotations omitted), and "context is crucial," *Fink v. Time Warner*,

---

[1] Defendant does not contest that the representations in question was consumer-oriented.

714 F.3d 739, 742 (2d Cir. 2013); *see Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) ("Courts 'view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'") (quoting *Wurtzburger*, 2017 WL 6416296, at *3); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (evaluating the "messages on the container . . . in sequence" in order to "analyze [their] total effect" on the consumer).

At the pleading stage, "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," *Fink*, 714 F.3d at 741, but it must proceed with care in doing so as the inquiry "is generally a question of fact not suited for resolution at the motion to dismiss stage," *Duran*, 450 F. Supp. 3d at 346 (collecting cases); *see Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14, *16 (S.D.N.Y. Aug. 12, 2016) ("[A]mple case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact"; only in "'rare situation[s] [is] granting a motion to dismiss . . . appropriate' with respect to the issue of whether a reasonable consumer would be misled by representations about a product.") (citation omitted).[2] "[A]t least in some cases, 'a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare' that reasonable consumers would not be misled." *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) (quoting *Verizon Directories Corp v. Yellow Book USA, Inc.*, 309 F. Supp. 2d

---

[2] "At the motion to dismiss stage, 'an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) . . ., but need only meet the bare-bones notice-pleading requirements of Rule 8(a) . . .'" *Kacocha*, 2016 WL 4367991, at *13 (citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).

401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world")).   However, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.  Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Campbell v. Whole Foods Market Grp., Inc.*, 2021 WL 355405 at \*5 (S.D.N.Y. Feb. 2, 2021) (quoting *Lugones. v. Pete & Gerry's Organic, LLC*, 440 F. Supp.3d 226, 242 (S.D.N.Y. 2020)).

In recent months, cases challenging the use of the term "vanilla" in food descriptions and advertising have generated a great deal of attention in this district and elsewhere.  *See, e.g., Twohig v. Shop-Rite Supermarkets*, 2021 WL 518021 (S.D.N.Y. Feb. 11, 2021); *Wynn v. Topco Assocs., LLC*, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021); *Barreto v. Westbrae Nat., Inc.*, 2021 WL 76331 (S.D.N.Y. Jan. 7, 2021); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020); *Pichardo* v. *Only What You Need, Inc.*, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020); *Steele*, 472 F. Supp. 3d at 47; *see also Sharpe* v. *A&W Concentrate Co.*, 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020).

This case lies at the intersection of two separate lines of authority.  First, a number of cases have held that the bare use of the word "vanilla" on a consumer good without any accompanying language or context was insufficient to convey to a reasonable consumer that the ingredient vanilla bean was contained in the product as opposed to a flavor that could be derived from a number of sources.  In *Cosgrove v. Blue Diamond Growers*, for example, the plaintiff was a consumer who purchased Blue Diamond Vanilla Almond Milk, allegedly believing that the product contained and was flavored by authentic vanilla derived from vanilla beans.  2020 WL

7211218, at *3-4.  He brought suit after learning that the milk contained only trace amounts of the real thing.  The court rejected the claim on the pleadings, holding that "a reasonable consumer would associate the representation of 'Vanilla'—with no additional language modifiers—to refer to a flavor and not to vanilla beans or vanilla extract."  *Id.* at *3.  The court was quick to note that: "Defendants' product does not use the words 'vanilla bean' or 'vanilla extract,' nor does it use language such as 'made with vanilla' or anything similar. The Product makes one representation—that it is vanilla flavored—and Plaintiffs do not allege that the Product did not deliver on that representation."  *Id.* at *4.  The court noted that "the consumer in the grocery store is looking, first and foremost, for almond milk—not vanilla," and that the word "vanilla" on the front of the product "allows the consumer to quickly understand the flavor of the almond milk and differentiate between products."  *Id*. at *3.

In *Barreto*, the product at issue was a vanilla soymilk product.  The front label of the defendant's product contained the words "vanilla" and "soymilk" and the product's ingredient list stated that the product included "natural vanilla flavor with Other Natural Flavors."  2021 WL 76331, at *1.  The court rejected the claim that the use of the word "vanilla" conveyed anything other than a flavor noting "[t]he front label does not contain any representations regarding the source or age of the vanilla flavor," *id*. at *5, and that "there is no claim anywhere on the packaging that natural vanilla is the predominant source of the vanilla flavor," *id*. at *3.

Other judges in this district have similarly dismissed claims where a container features the word "vanilla" but does not include representations specifying that the source of the vanilla flavor is vanilla beans themselves.  *See, e.g.*, *Steele*, 472 F. Supp. at 47 (ice cream label including language "made with . . . natural vanilla flavor" made representations only about the product's flavor, not its composition); *Pichardo*, 2020 WL 6323775, at *2-3 (label on defendant's vanilla-

flavored protein drink bearing the words "Smooth Vanilla" and a vanilla flower vignette on a protein-drink indicated flavor, not ingredients); *Wynn*, 2021 WL 168541, at *4 (S.D.N.Y. Jan. 19, 2021) ("Defendants' 'Vanilla Almondmilk' front label makes no representations whatsoever about the source of the vanilla flavor or the ingredients constituting it.")

The through line of these cases is that the word "vanilla," by itself, indicates a flavor, and the labels in question made no representation as to any particular ingredient(s) that were contained in the product or were the source of that flavor in the product.  In each of these cases the court noted that a different result might follow if the defendant had used additional language that made representations about an ingredient and not a flavor or contained additional modifiers or where consumers have a demonstrated reasonable belief about the inclusion of a particular ingredient.  *See Cosgrove*, 2020 WL 7211218, at *5  (argument that the product's label is misleading because proportion of real vanilla to vanillin is too small "would be more persuasive if the Product made representations about the presence of a specific ingredient, as the products in *Sharpe* and *Mantikas* did . . . [but] when a product makes representations about only the flavor, the appropriate inquiry is whether the product indeed has that flavor."); *Barreto*, *Inc.*, 2021 WL 76331, at *5 ("[t]he front label does not contain any representations regarding the source or age of the vanilla flavor,"); *Steele*, 472 F. Supp. at 50 ("[The] container does not mention vanilla beans, or bean extract."); *Wynn*, 2021 WL 168541, at *4 ("If, like in *Mantikas* and *Sharpe*, Defendant's product claimed to be 'made with' vanilla, the result here might well be different" and noting that *Izquierdo* was a case in which the misleading element was the fact that "a customer would see something that looked like a blueberry and conclude, incorrectly, that it was a real blueberry"); *Pichardo*, 2020 WL 6323775, at *1 ("Had the label contained other qualifying terms, such as 'made with,' 'contains,' or 'vanilla beans,' a reasonable consumer might have

been led to believe that vanilla from vanilla extract is the exclusive or primary flavor ingredient").

In the other line of cases, courts have sustained claims at the motion to dismiss stage where from context or the content of the language on a product label a reasonable consumer could understand that the language was referring to an ingredient. *See, e.g.*, *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018); *Izquierdo*, 450 F. Supp. 3d at 462; *Sharpe*, 2020 WL 4931045, at *5.

In *Mantikas*, the Second Circuit sustained a claim that Cheez-Its cracker boxes conspicuously labeled with "MADE WITH WHOLE GRAIN" and "WHOLE GRAIN" could mislead a reasonable consumer into believing that the grain product in the crackers was "entirely or at least predominantly whole grain." *Mantikas*, 910 F.3d at 637. Of significance to the *Mantikas* court, the language WHOLE GRAIN was conveyed in "large, bold-faced" letters on the front of the box, the "labelling of whole grain Cheez-its . . . implie[d] that, of the grain content in the product, most or all of it is whole grain, as opposed to *less nutritious* white flour," and the grain was "the products' primary ingredient." *Id*. (emphasis added).

Following *Mantikas*, courts in this Circuit have sustained claims where the language of a product label, in context, referred not only to a flavor but also indicated the presence of an ingredient. *See Izquierdo*, 450 F. Supp. 3d at 462 (a placard reading "blueberry" to refer to bagels that "appear[ed] to contain discrete pieces of fruit scattered throughout" was misleading where bagels in fact contained "primarily imitation blueberries" in light of a consumer's "normal expectations about blueberry baked goods" and an advertisement regarding Panera's commitment to "clean food" and "menu transparency" that appeared above the bagels); *Sharpe*,

2020 WL 4931045, at *5 (label "Made With Aged Vanilla" in bolded and all capital letters was misleading as to sodas that contained predominantly or exclusively artificial vanilla flavoring).

The product here does not fit neatly into either of the categories of cases described above. Unlike in *Sharpe* and *Mantikas*, Defendant does not use the words "made with" to convey that its product contains actual vanilla from vanilla beans. *See Campbell*, 2021 WL 355405, at *6 n.5 ("[t]he absence or presence of the words 'made with,'" in particular, "can make a substantial difference" in establishing whether a word like vanilla indicates a flavor or an ingredient; "made with" suggests the presence of an ingredient such as vanilla beans). Nor does Defendant advertise a commitment to "clean food" and "menu transparency," or promote the nutritional values of vanilla from vanilla beans. *See Izquierdo*, 450 F. Supp. 3d at 462; *Mantikas*, 910 F.3d at 637. But, unlike in the vanilla cases cited above where courts have dismissed claims on the pleadings, Defendant does not use the mere unadorned word "vanilla" without any accompanying language or message. Rather, it uses the image of a vanilla flower. The flower is conveyed prominently, next to the image of a coffee bean, and alongside the use of the word "vanilla."

The Court considers the language of the Product label and its context. *See Fink*, 714 F.3d at 742 ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Pichardo*, 2020 WL 6323775, at *2 ("When analyzing whether a label is deceptive, courts do not view the label in isolation. Instead, '[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'") (quoting *Wurtzburger*, 2017 WL 6416296, at *3); *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) ("[i]n determining whether a reasonable consumer would be

misled . . . the [c]ourt must consider 'the entire context of the [package].'") (quoting *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016)).

The Court concludes that a reasonable consumer, acting reasonably and reading the Product label, could understand it to convey that the Product contains some non-negligible amount of extract derived from a vanilla bean, but would not understand the Product's vanilla flavor to be derived predominantly or exclusively from vanilla bean extract. Several facts support the Court's conclusion that a reasonable consumer could be led to believe that the Product contains some non-trace amount of vanilla derived from vanilla beans. First, the absence of the language "made with" is not dispositive; packaging can convey to a reasonable consumer the message that a Product includes a particular ingredient without necessarily using the words "made with." *See Campbell*, 2021 WL 355405, at *6 (noting that the absence of the words "made with" is not dispositive). A complaint that plausibly alleges that a product's label conveys that it contains a particular ingredient, but that ingredient is present in only trace amounts, states claims under Section 349 and 350. *See Mantikas*, 910 F.3d at 633. A defendant is not permitted "to lead consumers to believe" that its products were made with an ingredient "so long as [the product] contained an iota of [that ingredient]." *Id*.

Second, both the imagery on the Product label and its context plainly suggest that the Product contains extract from a vanilla bean. The top of the can features the language "Espresso" next to the brand name "Monster." The representation "Vanilla Cream" is printed in all capital letters next to the Monster brand logo in the middle of the can. The can contains a large image of a vanilla flower immediately below the words "Vanilla Cream," conveying that the flavor of vanilla comes at least in part from the bean that is attached to the flower and that the Product contains some amount of extract from a vanilla bean. The message is reinforced by the

"graphics of the packaging" and the language and imagery that is given equivalent focus on the can. *See Campbell*, 2021 WL 355405 at *8. On its right side, on the other side of the "claws" of the Monster, the can contains the language "Triple Cream" below which are images of coffee beans. The words "Vanilla Cream" is written in the same size, font, and color, as well as printed at the same level, as "Triple Cream," placing the words in visual parity with one another. So too the image of the vanilla flower is as large as the images of coffee beans. At the bottom of the can, there is an image of a cup of apparently hot coffee.

The Court originally incorrectly assumed that the Product was marketed solely for the effect (increased energy) it would have on those who consumed it, and not for its ingredients. However, as Defendant admitted at oral argument, the "Espresso" and "Triple Shot" representations, along with the image of the coffee beans and a cup of what appears to be coffee, are intended to convey the presence of ingredients in the Product and not just flavors or facsimiles of ingredients. The message is that the Product contains three shots of espresso and that the espresso is derived from real coffee beans, not some substitute for coffee beans. Hr'g Tr. at 25:21-26:1 (Mar. 4, 2021). The word "cream" likewise is intended to refer to an ingredient in the Product, not some substitute ingredient that imparts a cream-like flavor. To a reasonable consumer, these impressions could be confirmed by the text on the side of the can which conveys that the Product is not just an energy drink but a coffee drink, and that it contains both real espresso and real cream and that the energy blend only enhances the other ingredients:

> Italians are famous for artistic masterpieces, fast cars, fashion, beautiful women and the perfect espresso.  The latest trend is the Macchiato, a blend of strong expresso and milk.
>
> We liked the idea so much we traveled to Europe to create our latest *coffee*, Espresso Monster.  *Three shots of espresso (ya 3) blended with milk* and enhanced with Monster's Espresso Energy Blend.

Dkt. No. 33, Ex. A (emphasis added).[3]  The ingredient list further would confirm this understanding.  It reads that the Product contains "Brewed Imported Expresso Coffee (Water, Coffee)" and "Cream."  A consumer reading the Product labeling thus could reasonably understand that the representation of the coffee beans and the cup of coffee, alongside the language "Espresso" and "Triple Shot" and "Cream," were intended to convey that the Product contained three shots of real espresso (from coffee beans) and real cream, and that therefore the representation of a vanilla flower, alongside the words vanilla, should be understood to mean that the Product also contains some vanilla derived from a vanilla bean.  *See Campbell*, 2021 WL 355405, at *8 (where "packaging treat[ed] the words 'graham' and 'honey' as equivalents" because the words were "in visual parity with each other" and there was a "graphical equivalence

---

[3] Defendant argues that because most vanilla products are not made exclusively or primarily from vanilla beans and a large percentage of vanilla-flavored products get their flavor from vanillin—a compound that contributes to a vanilla flavor but that can be derived from sources other than the vanilla bean—no reasonable consumer would believe that the vanilla in the Product comes from a vanilla bean.  Hr'g Tr. 7:18-20; 6:7-18 (Mar. 4, 2021).  At this stage, however, the Court cannot assume that a reasonable consumer will necessarily be knowledgeable about the compounds that create the vanilla taste, the artificial and natural sources from which they derive, and where the compounds are obtained for commercial use.  *See Campbell*, 2021 WL 355405, at *7 (Court cannot assume that customers will not know that "graham" refers to a type of flower); *cf. Wynn*, 2021 WL 168541, at *3 ("Plaintiffs point to a range of federal labeling regulations as evidence of what consumers should expect different types of labels to imply about the contents of their products . . . [b]ut even if Plaintiffs are correct about what the federal regulations require . . . the complaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations.")

of 'honey' and 'graham' on the packaging, and because "'graham' refer[ed] to an ingredient," the court could not "conclude that 'honey' [did] not also refer to an ingredient.").

Third, other allegations in the Complaint lend support to the Court's conclusion.  The Complaint alleges (with a citation) that "[c]onsumers are seeking products which obtain their flavoring from their characterizing food ingredients, i.e., strawberry shortcake which gets is (sic) flavor from actual strawberries," SAC ¶ 9, that "demand has flourished for naturally sourced vanilla" and in response manufacturers have transitioned to naturally sourced ingredients, *id*. ¶¶ 10, 11, and that some number of consumers answered a survey by stating that based on the Product's representations they believed that the vanilla taste came from vanilla beans, *id*. ¶ 43.  Although Defendant levels forceful attacks on these allegations, and each alone would not be sufficient to support Plaintiff's allegations absent the Court's analysis of what a reasonable consumer could understand from the Product label itself, *se Yu v. Dr. Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020) ("adding surveys cannot alone salvage implausible claims" of consumer deceptions), they do tend to help the Complaint "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

At the same time, however, the Court concludes that a reasonable consumer could not draw the conclusion from the Product labelling that the vanilla bean (or vanilla bean extract) was the predominant or exclusive source of the vanilla flavor in the Product.  The labelling itself makes no representation with respect to the sources of the vanilla flavoring or whether, despite vanilla bean being contained in the Product, all or most of the vanilla flavor comes from vanilla beans.  They simply indicate that the Product contains the ingredient vanilla bean extract.  The Product's label makes no representation about the quantity of such vanilla compared to other flavoring compounds.  In fact, the ingredient list indicates that the product contains "natural

flavors," and does not state that those natural flavors are derived mostly or exclusively from a vanilla bean. *See Barreto*, *Inc.*, 2021 WL 76331, at *3 (dismissing a claim where "[plaintiff] does not allege that there is no natural vanilla present as a flavoring" and "[t]he [c]omplaint itself negates a plausible claim that a reasonable consumer would expect that a product with a vanilla flavor would derive most or all of its vanillin—the main flavor component of vanilla—solely from natural vanilla."); *Twohig*, 2021 WL 518021, at *4 ("the front label of the [p]roduct does not contain qualifying words that would lead a reasonable consumer to believe that vanilla from vanilla beans is the exclusive or predominant flavor ingredient."). The label does not foreclose that other compounds besides extract from vanilla beans contribute to the vanilla flavor. A reasonable consumer therefore would have no right to assume that the Product's vanilla flavor is derived predominantly from one ingredient as opposed to another.

The conclusion that a reasonable consumer could understand from the label that the Product contains some non-negligible non-trace amount of vanilla bean extract, moreover, does not end the analysis. Plaintiff must also plead that the understanding the Product conveys is false or misleading, i.e., that the Product does not contain vanilla bean extract. A plaintiff cannot simply obtain discovery into a product's ingredients by making the conclusory assertion that the defendant is falsely representing those ingredients. The Complaint is deficient in this regard.

Although Plaintiff asserts that the label is "false, deceptive and misleading because the Product contains trace or a *de minimis* amount of vanilla from real vanilla beans from the vanilla plant," *see* SAC ¶¶ 4, 44, it does not support that conclusory assertion with allegations of fact. Plaintiff's assertions about the Product's ingredients rely on a GC-MS analysis, which is "a method of targeted and non-targeted detection capable of identifying a wide range of volatile compounds responsible for the bulk of vanilla's flavor with minimal to no degradation." SAC ¶

46.  That analysis compared the compounds which provide the vanilla flavor from Simply

Organic Madagascar Vanilla Extract, *id*. ¶ 18—represented to be vanilla derived from vanilla

bean, *id*. ¶ 46—with the compounds contained in the Product that "are responsible for the bulk of

vanilla's flavor," *id*. ¶ 43.  The inference Plaintiff would have the Court draw does not support

his conclusion.   Plaintiff emphasizes that "the Product contains an abnormal excess of vanillin . .

. which is a strong indicator it contains vanillin from non-vanilla sources."  *Id*. ¶ 50.  Plaintiff

also states that the results of the GC-MS test show that "[t]he flavors and amounts [of

compounds] detected support the inferences and allegations that the 'Natural Flavors' in [the

Product] may contain some vanilla but [that the Product] is predominantly flavored with non-

vanilla flavors including vanillin."  SAC ¶ 62; *see also id*. ¶ 45 ("Listing 'Natural Flavors' [on

the product label] means the Product's vanilla taste is not derived *exclusively or even*

*predominantly* from vanilla sources because if it did, it would list 'vanilla extract' or 'vanilla

flavoring'") (emphasis added).  But those allegations stop far short of establishing that there is

only a trace or de minimis amount of vanilla from vanilla beans in the Product.  From the results

of the study, even accepting it and Plaintiff's characterization of the results at this motion stage,

the most that the Court can infer is that vanilla from the vanilla beans may contribute 49 percent

of the vanilla, but not all or most of the flavor.  Any other inference is purely speculation.

Finally, the factual allegations of the Complaint do not support Plaintiff's conclusory

assertion that the Product contains artificial vanilla flavoring contrary to the label's

representations.  Plaintiff alleges that the results of the GC-MS analysis demonstrate the presence

of maltol and piperonal.  SAC ¶¶ 54-60.  Although Plaintiff concedes that maltol is "sometimes

detected in vanilla extract," he alleges that the amount of maltol relative to other compounds

indicates that at least some of it did not derive from vanilla bean, *id*. ¶ 55, and that piperonal is

"an artificial flavor not found in vanilla," *id*. ¶ 58.  Plaintiff derives the latter proposition from federal regulations that define artificial flavors as including piperonal.  *Id.* (citing 21 C.F.R. § 172.515(b) for proposition that piperonal is "an artificial flavor").  The very same regulations, however, also make clear that piperonal is not invariably derived from artificial sources; it can be derived "from natural sources."  *See Barreto*, 2021 WL 76331, at *4 (rejecting argument that the fact that a substance is listed as a synthetic flavoring substance is sufficient to establish it is derived from artificial sources because "the definition of artificial flavor in turn 'includes the substances listed in §[] 172.515(b) . . . except where these are derived from natural sources'") (quoting 21 C.F.R. § 101.22(a)(1)).  The fact that some of the maltol may not be derived from a vanilla bean and that piperonal is not found in a vanilla bean does not establish that the vanilla flavor in the Product is derived artificially and not from other natural ingredients in the Product. In short, while it may be possible that the Product contains artificial flavors, Plaintiff has not made any well-pled allegations establishing that it is plausible that the product contains artificial compounds.  Plaintiff thus has not sufficiently alleged that the vanilla in Defendant's product was artificial.  "Maltol, piperonal, and vanillin can be either artificial or natural, depending on how they are derived."  *Wynn*, 2021 WL 168541, at *5; *see also Barreto*, 2021 WL 76331, at *4 (dismissing complaint where it "contain[ed] no allegation that the analysis found that the maltol was derived from artificial rather than natural sources"); *Twohig*, 2021 WL 518021, at *6 ("Plaintiffs do not plausibly allege that the vanillin, piperonal, and maltol detected by the GS-MS analysis were derived from artificial rather than natural sources.").

Therefore, Plaintiff has not pled a violation of §§ 349 and 350 of the NYGBL.

B.      **FDCA Allegations**

Plaintiff also alleges that Defendant's label violates FDA standards for food labeling.

SAC ¶¶ 65, 67.  That framing of the Complaint, however, is not sufficient to manufacture a

claim.

With limited exceptions, "all . . . proceedings for the enforcement, or to restrain

violations," of the FDCA must be brought by and in the name of the United States.  *See* 21

U.S.C. § 337(a).  It is left to federal government enforcement.  The limited exceptions pertain to

certain claims that can be brought by a State.  *See* 21 U.S.C. § 337(b).  The statute does not

provide a private cause of action.  *See Barreto v. Westbrae Nat., Inc.*, 2021 WL 76331, at *5

(S.D.N.Y. Jan. 07, 2021).

That "gap" is not filled by the NYGBL.  *Barreto*, 2021 WL 76331, at *5.  "To state a

GBL claim, the challenged act must be 'inherently deceptive,' and 'such acts cannot be re-

characterized as 'deceptive' simply on the grounds that they violate another statute which does

not allow for private enforcement.'"  *Id.* (quoting *Nick's Garage, Inc. v. Progressive Casualty*

*Ins. Co.*, 875 F.3d 107, 127-28 (2d Cir. 2017)).  Whether or not the Product complied with the

technical requirements under the FDCA, for the reasons described in the preceding section, it

was not inherently deceptive" under New York law.  Plaintiff's allegations about the Product's

compliance or lack thereof with the FDCA are irrelevant to its NYGBL claims, *see Pichardo*,

2020 WL 6323775, at *3 n.6 ("Plaintiffs' claims regarding FDA regulations are not relevant to

determining whether a label is deceptive or misleading under GBL §§ 349-50."); *Steele*, 472 F.

Supp. 3d at 49-50 (same); *see also Conboy v. AT&T Corp.*, 241 F.3d 242, 249 (2d. Cir. 2001)

("[A] GBL claim . . . fails where the violation of [an]other statute by conduct that is not

inherently deceptive is claimed to constitute a deceptive practice that serves as the basis for the

GBL [] claim"), and to the extent Plaintiff purports to bring a separate claim based on the federal

labeling standards, that claim is dismissed, *see PDK Labs Inc. v. Friedlander*, 103 F.3d 1105,

1113 (2d Cir. 1997) (Plaintiff's "dogged insistence that PDK's products are sold without proper

FDA approval suggests" his goal is "to privately enforce alleged violations of the FDCA. . . .

However, no such private right of action exists.").

### C.    Common Law Claims

#### 1.    Negligent Misrepresentation

To state a claim for negligent misrepresentation under New York law, a plaintiff must

show that:

> (1) The defendant had a duty, as a result of a special relationship, to give correct
> information; (2) the defendant made a false representation that he or she should
> have known was incorrect; (3) the information supplied in the representation was
> known by the defendant to be desired by the plaintiff for a serious purpose; (4) the
> plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on
> it to his or her detriment.

*Anschultz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation

marks omitted).

Plaintiff's negligent misrepresentation claim fails because Plaintiff has not plausibly

alleged the existence of a special relationship or a privity-like relationship with Defendant.

Whether a special relationship exists between parties depends on "whether the person making the

representation held or appeared to hold unique or special expertise; whether a special

relationship of trust or confidence existed between the parties; and whether the speaker was

aware of the use to which the information would be put and supplied it for that purpose." *Suez*

*Equity Invs. L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (internal quotation

marks omitted).

The transactions alleged are insufficient to establish a special relationship for the

purposes of a negligent misrepresentation claim. *See Sarr*, 2020 WL 729883, at *6 (no special

relationship where alleged misrepresentations were on food product's label); *Izquierdo*, 2016 WL 6459832, at *8 ("basic commercial transaction does not give rise to a special relationship"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *23-25 (E.D.N.Y. Sept. 22, 2015) (no "special relationship" between manufacturer of allegedly misbranded product and consumer); *Alley Sports Bar, LLC v. Simplexgrinnell, LP*, 58 F. Supp. 3d 280, 293 (W.D.N.Y. 2014) ("special relationship" requires closer degree of trust than ordinary buyer and seller); *Dall. Aerospace, Inc. v. CIS Air Corp.*, 2002 WL 31453789, at *3 (S.D.N.Y. Oct. 31, 2002) (same), *aff'd*, 352 F.3d 775 (2d Cir. 2003). *See generally Campbell*, 2021 WL 355405, at *11 & n.10 (collecting cases for proposition that engaging in a "basic commercial transaction . . . does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation").

Plaintiff argues that he has adequately alleged that Defendant held a "unique or special expertise," Dkt. No. 34 at 20-21, but he simply refers to one paragraph in his complaint where he alleges—in a conclusory manner—that Defendant "held itself out as having special knowledge and experience in production, service, and/or sale of the product type," SAC ¶ 117. *See Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"); *Campbell*, 2021 WL 355405, at *11 & n.9 ("This Court disregards the conclusory allegations in the complaint that the duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.") (internal quotation marks omitted).

Therefore, Plaintiff's negligent misrepresentation claim is dismissed.

###### 2. Warranty

###### a. Express Warranty

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain."  N.Y. U.C.C. § 2-313(1)(a). Under New York law,

> [t]o state a claim for breach of express warranty . . . a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.

*Goldemberg*, 8 F. Supp. at 482; *see also Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (stating the same elements).  In addition, a breach of express warranty claim requires that "a buyer . . . provide the seller with timely notice of the alleged breach of warranty."  *Quinn v. Walgreens Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-607(3)(a)).

Plaintiff alleges that Defendant "warranted to plaintiff and class members that [the Product] possessed substantive, quality, compositional and/or environmental [attributes] which they did not."  SAC ¶ 122.  However, Plaintiff did not specify any particular language from the Product's labeling when making this claim and points to no express statements on these subjects. Defendant's Espresso Monster Vanilla Cream Triple Shot does not state that it is flavored exclusively with vanilla beans and a reasonable consumer would not interpret the representation of "Vanilla Cream" to make this claim.  *See generally Barreto*, 2021 WL 76331, at *6 (S.D.N.Y. Jan. 7, 2021) (rejecting an express warranty claim nearly identical to that made by Plaintiff here in a case involving vanilla soymilk); *Twohig*, 2021 WL 518021 at *10 (S.D.N.Y. Feb. 11, 2021) (same).

In addition, Plaintiff neglected to provide notice to Defendant as required to exercise a claim for breach of express warranty.[4]  Plaintiff argues that their lack of pre-suit notice falls under an exception to the notice requirement for retail customers.  (Doc. 34 at 21).  However, Plaintiff's arguments for an exception to this rule have been rejected by this Court.  The pre-suit notice requirement is waived only in cases involving personal injury.  *See Lugones*, 440 F. Supp. 3d at 244-45.  Here, Plaintiff has not alleged any physical or personal injury as a result of Defendant's alleged breach.

Plaintiff's breach of express warranty must be dismissed for failure to provide timely notice.

### b.    Implied Warranty of Merchantability

To be merchantable, goods "must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any."  N.Y. U.C.C. § 2-314(2).  A breach of the implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used."  N.Y. U.C.C. § 2-314(2)(c).  "A warranty of merchantability . . . does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality."  *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010) (quoting *Viscusi v. Proctor & Gamble*, 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007)) (internal quotation marks omitted).  "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."  *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14,

---

[4] The SAC notes that "Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees," SAC ¶ 129, but there is no indication in the pleadings or briefings that Plaintiff provided timely notice of the breach to Defendant.  Instead, Plaintiff argues for an exception to the notice requirement in their opposition brief.

2015).  In this case, in order to breach the implied warranty of merchantability, the Product would have to have been unfit to drink.

Plaintiff alleges that "[t]he Product did not conform to its affirmations of fact and promises due to defendant's actions and w[as] not merchantable."  SAC ¶ 131.  Because Plaintiff does not suggest that the Product is not fit for human consumption, he fails to state a claim for breach of the implied warranty of merchantability under New York law.

Moreover, under New York law, "absent any privity of contract between Plaintiff and Defendant" a claim for breach of the implied warranty of merchantability "cannot be sustained as a matter of law except to recover for personal injuries."  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015).  Plaintiff acknowledges that he did not purchase the Product directly from Defendant, instead purchasing the Product from third-party retailers, such as Whole Foods Market, local delis and/or bodegas, and chain drugstores.  SAC ¶¶ 2, 88.  Thus, Plaintiff has not adequately alleged privity.  *See Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 262 (E.D.N.Y 2014) (finding a lack of privity where plaintiff purchased product at issue from a third-party, not the defendant, and did not allege personal injuries).

### c.  **Magnuson-Moss Warranty Act**

The Magnuson-Moss Warranty Act ("MMWA") "grants relief to [] consumer[s] who [are] damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty."  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (quoting *Wilbur v. Toyota Motor Sales, U.S.A.*, 86 F.3d 23, 26 (2d Cir. 1996)). A "written warranty" is "any affirmation of fact or written promise . . . which . . . affirms or promises that such material . . . will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6)(A).

25

Defendant argues that the statements challenged by Plaintiff are merely product descriptions governed by the FDCA and not a "warranty" as defined in the MMWA.  Dkt. No. 32 at 20.  Plaintiff addresses Defendant's challenges to his warranty claims, *see* Dkt. No. 34 at 21-22, but fails to address Defendant's MMWA arguments.  As such, the MMWA claim is abandoned.  *See Campbell*, 2021 WL 355405, at *14 ("Plaintiff has abandoned this claim by failing to brief the issue in response to Defendant's motion to dismiss."); *Johnson v. City of New York*, 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017) ("By failing to address Defendants' arguments in support of dismissing this claim, it is deemed withdrawn or dismissed as abandoned."); *Romeo & Juliette Laser Hair Removal Inc. v. Assara I LLC*, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

In addition, the absence of a qualifying warranty necessitates dismissal of the MMWA claim.  *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").  Plaintiff has not adequately plead a cause of action for breach of written or implied warranty under state law and as such, Plaintiff cannot state a claim under the MMWA.

### 3.   Fraud

In order to state a claim for fraud under New York law, a plaintiff must "demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373

(N.Y. 1996)).  Claims for fraud must also satisfy the heightened pleading requirements of Rule 9(b) and be plead "with particularity."  *See B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010).  Rule 9(b) also requires a plaintiff to "allege facts that give rise to a strong inference of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted).  Plaintiffs may raise this inference "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Lerner*, 459 F.3d at 290-91.

Here, Plaintiff fails to plead facts that give rise to a strong inference of fraudulent intent. Plaintiff merely makes the conclusory allegation that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled customers."  SAC ¶ 138. Accordingly, in addition to the absence in the Complaint of any plausible allegation of misrepresentation or omission, as described *supra*, the fraud claim is dismissed for this independent reason.  *See Campbell*, 2021 WL 355405, at *12 (dismissing fraud claim where "Plaintiff's only allegation about Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label when it knew this was not true") (internal quotation marks omitted); *Barreto*, 2021 WL 76331, at *8 (dismissing fraud claim because complaint contains only conclusory allegations that Defendant's fraudulent intent was evinced by its failure to accurately identify the Products on the front label when it knew this was not true") (internal quotation marks omitted); *Twohig*, 2021 WL 518021, at *8 (same).

27

### 4.    Unjust Enrichment

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'"  *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (internal quotation marks omitted).

District courts in this circuit have dismissed unjust enrichment claims that "simply duplicate[], or replace[], a conventional contract or tort claim."  *Ebin v. Kangadis Food, Inc.*, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013); *see Price v. L'Oreal USA, Inc.*, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants. . . . Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ("Plaintiff's unjust enrichment claim relies on the same facts as her other causes of action in tort. Because this claim is duplicative, it is dismissed."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) ("Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim. Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed.").

Here, Plaintiff's unjust enrichment claim is premised on the same theory of misrepresentation that undergirds their statutory claims under NYGBL §§ 349 and 350 and their

tort claims for negligent misrepresentation and breach of warranty.  The theory is pleaded in a single sentence: "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits."  SAC ¶ 141.  Plaintiff has failed to explain how the unjust enrichment claim is not merely duplicative of his other claims.

Therefore, Plaintiff's claim of unjust enrichment must be dismissed.

**D.    Injunctive Relief**

"[I]t is well settled that a request for . . . injunctive relief is not an independent cause of action," *Catala v. Joombas Co.*, 2019 WL 4803990, at *6 n.10 (S.D.N.Y. Sept. 23, 2019).  Rather, "the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts."  *KM Enterps., Inc. v. McDonald*, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013).

Moreover, Plaintiff has not alleged a threat of future injury.  *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-49 (2d Cir. 2020).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  Plaintiff alleges that he "would not have purchased the Product in the absence of Defendant's misrepresentations and omissions."  SAC ¶ 91.  He obviously now is on notice of what he claims to be the misrepresentations and omissions.  Thus, even if he had sustained a harm in the past, he will not be harmed again in the same way in the future absent an injunction.  *See Nicosia*, 834 F.3d at 239; *Berni*, 964 F.3d at 147 ("past purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item.").  Although

Plaintiff claims that he "intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components," SAC ¶ 93, the only injunctive relief he would be entitled to—even if he had a meritorious claim—is an order directing Defendants to cease their allegedly violative activity.  He would not be entitled to an order compelling Defendants to manufacture the Product to his liking.  In any event, the Product had been discontinued, so Plaintiff cannot plausibly allege an intent to purchase the product in the future.  *See* Dkt. No. 32 at 27; *cf. Kommer v. Bayer Consumer Health*, 710 F. App'x 43 (2d Cir. 2018) (holding that claim for injunctive relief was properly dismissed for lack of standing where plaintiff alleged that because he knew of the defendant's deception he no longer intended to purchase defendant's product).

Accordingly, the claim for injunctive relief is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.  The Complaint is dismissed without prejudice as to the Section 349 and Section 350 claims.  Plaintiff may submit an amended complaint within 30 days of the date of this Order adding any additional allegations it has to support the inference that the Product contains only a trace amount of vanilla bean.  The Complaint is dismissed with prejudice as to the remaining claims.

SO ORDERED.

Dated: March 12, 2021
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge